## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT
## AND ARREST WARRANT

I, RYAN PETRASEK (hereinafter referred to as "affiant"), a Special Agent with the United States Secret Service (hereinafter referred to as "USSS"), which is part of the United States Department of Homeland Security, having been duly sworn, hereby depose and states as follow:

A.  OBJECTIVE

This affidavit is presented in support of a criminal complaint against and an arrest warrant for Perry Perete Biayeibo ("BIAYEIBO"), also known as Peter Diabo, charging him with conspiracy to commit bank fraud and substantive bank fraud, in violation of 18 U.S.C. §§ 371, 1344 and 2.

B.  CREDENTIALS

Affiant has been employed as a Special Agent with the USSS since April of 2005. Prior to that time, affiant was employed with the Washington, D. C., Metropolitan Police Department for four years. Affiant has conducted several investigations involving financial crimes, and has participated in the execution of numerous search warrants and arrests.

C.  SOURCE OF EVIDENCE

Affiant is familiar with the facts and circumstances of this investigation. All relevant events described herein occurred in the District of Columbia and elsewhere. The information contained in this affidavit is based upon my personal knowledge, knowledge obtained during my participation in this investigation, knowledge obtained from other individuals including review of documents and audio-recordings related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience. Since this affidavit is being submitted for the limited purpose of supporting a criminal complaint and arrest warrant, I have not included every fact known to me concerning this

investigation. I have set forth only those facts that I believe are necessary to establish probable cause that the defendant named herein has violated the conspiracy and bank fraud statutes.

D.  RELEVANT STATUTES

1.  Conspiracy, 18 U.S.C. § 371

This statute provides, in relevant part, as follows:

"If two or more persons conspire . . . to commit any offense against the United States . . . and one or more of such persons do any act to effectuate the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both."

2.  Bank Fraud, 18 U.S.C. §1344

This statute provides as follows:

"Whoever knowingly executes, or attempts to execute, a scheme or artifice ─

(1) to defraud a financial institution; or

(2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;

Shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both."

Title 18, United States Code, Section 20(2), provides, in relevant part, that: "As used in this title, the term 'financial institution means- . . . (2) a credit union with accounts insured by the National Credit Union Share Insurance Fund[.]"

    3. <u>Aiding and Abetting, 18 U.S.C. § 2</u>

Title 18, United States Code, Section 2, provides that:

    (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

    (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States is punishable as a principal.

    E.   <u>FACTUAL BACKGROUND</u>

    1. On April 6, 2006, affiant was contacted by a Security Specialist for Bank-Fund Staff Federal Credit Union (hereinafter referred to as "BFSFCU") located at 1750 H Street NW, Washington, D.C. BFSFCU is federally insured by the National Credit Union Administration, an arm of which is the National Credit Union Share Insurance Fund which is used to insure members share accounts at covered credit unions. The Security Specialist informed affiant that approximately $34,000.00 in stolen checks had been deposited into the account of two BFSFCU members. The joint account belongs to two individuals, whose identities are known to affiant, a mother and her son (the son is hereinafter referred to as Individuals #1). The three stolen checks in question were courtesy checks issued to three different MBNA Bank credit card holders, none of whom were BIAYEIBO or the other individuals whose actions are discussed in this affidavit. Typically these checks are mailed to credit card holders to be used for whatever purpose the credit card holder desires. The three checks were returned to BFSFCU from MBNA Bank as they were listed as "stolen."

    2. On April 6, 2006, affiant met with Individual #1, the holder of the account into which the stolen checks were deposited at BFSFCU. Individual #1 stated that on or about March 29, 2006, a

co-worker of his at a store in Rockville Maryland (the co-worker is hereinafter referred to as "Individual #2) approached Individual #1 about cashing checks for a friend named "Pee" who was a Nigerian citizen who could not open a bank account in the United States. Individual #1 agreed to cash the checks in exchange for a percentage of the funds. Individual #2 then gave Individual #1 a MBNA courtesy check for $9,800 made payable to Individual #1. Individual #2 then took Individual #1's BFSFCU Debit card and Personal Identification number as insurance that Individual #1 would not take all the money. Individual #1 deposited the check in his BFSFCU account at a branch located at 100 Lake Forest Boulevard in Gaithersburg, Maryland. The following day, Individual #1 was introduced to "Pee" (later identified as BIAYEIBO) by Individual #2 in an unknown location in Prince George's County, Maryland. The three individuals then traveled to the BFSFCU credit union branch located at 2121 Pennsylvania Ave, N.W., Washington, D.C., to withdraw the funds from the previously mentioned check. BIAYEIBO instructed Individual #1 to withdraw $3,000 in cash and obtain a cashier's check for $4,950 in Individual #1's name. The three individuals then left the Credit Union and traveled to a First Cash Advance located in Washington D.C. Individual #1 entered the First Cash Advance and negotiated the cashiers check. BIAYEIBO then told Individual #1 to keep $1,600 for himself, give $500 to Individual #2, and BIAYEIBO would keep the remaining $2,850. At the end of the meeting, BIAYEIBO gave Individual #1 a second courtesy check from MBNA Bank for $9,895 made payable to Individual #1.

3. On April 3, 2006, Individual #1 deposited the second MBNA check into his BFSFCU account. The next day, Individual #1 met BIAYEIBO at the BFSFCU at 2121 Pennsylvania Ave, N.W., Washington, D.C. BIAYEIBO received $6,895 from Individual #1 and Individual #1 kept the remaining $3,000 dollars. Later the same day, BIAYEIBO had Individual #1 meet him at the White

Flint Mall and gave Individual #1 the third MBNA Bank courtesy check made payable to Individual #1 for $14,850. BIAYEIBO instructed Individual #1 to deposit the check into the Gaithersburg shared branch of BFSFCU account which Individual #1 did.

    4. On April 5, 2006, the Security Specialist from the BFSFCU contacted Individual #1 and told him that the three MBNA Bank courtesy checks were returned to the BFSFCU as stolen. Individual #1 explained to the Security Specialist how he was deceived into cashing the stolen checks. He also explained that he had given his Debit card to Individual #2 who in turn gave the card and his Personal Identification Number to BIAYEIBO. The Security Specialist checked and discovered that $3,044.97 in ATM withdraws and purchases were made at various locations in Maryland using Individual #1's Debit card..

    5. On April 6, 2006, affiant met with Individual #1 and conducted a consenually intercepted telephone call to BIAYEIBO. During the recorded phone conversation, BIAYEIBO made statements questioning why Individual #1's Debit card was not working. It was not working because BFSFCU had frozen the account. BIAYEIBO then scheduled a meeting at the BFSFCU at 2121 Pennsylvania Ave N.W., Washington, D.C., to collect the money that Individual #1 owed him for the stolen check.

    6. At approximately 4:15 p.m., on April 6, 2006, BIAYEIBO arrived at the intersection of 21st and Pennsylvania Avenue, N.W., Washington, D.C. BIAYEIBO was operating a 1994 white Jeep Cherokee. BIAYEIBO then met with Individual #1 in Individual #1's vehicle that was parked in front of the Cherokee. Individual #1 consented to a non-telephonic electronic recording of the conversation. During the conversation, BIAYEIBO admitted to writing the MBNA courtesy checks and explained how much money was owed to BIAYEIBO by Individual #1. Individual #1 asked

BIAYEIBO if he could get him another check. BIAYEIBO instructed Individual #1 to go into the bank and get his money and then they would talk about a fourth check.

7. Special Agents of the USSS, including affiant, then stopped BIAYEIBO while he was sitting in the Cherokee in the 2100 block of Pennsylvania Ave, N.W., Washington, D.C. BIAYEIBO gave the Agents three different names, acted very nervous and gave deceptive answers as to why he was in Individual #1's vehicle. When asked if BIAYEIBO had a driver's license, he stated he did not. BIAYEIBO gave the affiant permission to search the Cherokee. Discovered by one of the Agents in the center counsel was a District of Columbia Drivers license with BIAYEIBO's picture on it. The name on the license, however, was not his. A WALES/NCIC check on the name on the license came back to a different date of birth and Social Security number from that of BIAYEIBO. On closer examination, the identification appeared to be counterfeit. A WALES/NCIC check of the Cherokee's Virginia Tag of JMF-9850 came back registered to a Toyota with no owner's name or Vehicle Identification Number associated with it. A check of the Cherokee's Vehicle Identification Number revealed no record or no listing. When asked who owned the vehicle, BIAYEIBO's response was that it was owned by a friend, whose name he could not remember, and that the friend owned a car dealership. When asked by affiant for the fourth time what was BIAYEIBO's name, BIAYEIBO responded "I'm known by many names". Affiant asked if the name on the D.C. driver's license was his. BIAYEIBO responded by stating "it is a genuine license." BIAYEIBO was placed under arrest by the Uniform Division of the USSS for numerous traffic offenses and his true name was discovered at that time, along with multiple aliases.

8. On April 7, 2006 a Special Agent of the USSS met with an Assistant Permit Officer for the District of Columbia Department of Motor Vehicles ("DMV"). The DMV employee examined

the license that was found with BIAYEIBO's picture on it.  The DMV employee verified the license was indeed counterfeit.

9.  BIAYEIBO is described as a black male, born in Nigeria, thirty-five years old, five feet, eight inches tall, weighing approximately 150 pounds, black hair, brown eyes, with a medium complexion.

F.  CONCLUSION

Based on the foregoing, affiant respectfully submits that there is probable cause to believe that BIAYEIBO has engaged in the crimes of conspiracy and bank fraud.

Wherefore, affiant respectfully requests that a complaint and a warrant be issued authorizing the arrest of BIAYEIBO for the above-stated violations of Title 18, United States Code, Sections 371, 1344 and 2.

>     Ryan Petrasek
>     Special Agent
>     United States Secret Service

Subscribed and sworn to before

me this _____ day of April, 2006.


THE HONORABLE DEBORAH A. ROBINSON
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF COLUMBIA